JOHN FRESE, demandante y apelado, *v.* COMISIÓN DE SERVICIO PÚBLICO, demandada y apelante.

Núm. 7738.—*Sometido:* Abril 11, 1939. *Resuelto:* Julio 5, 1939.

*Tomás Torres Pérez,* abogado de la apelante; *Henry G. Molina* y *S. de la Fuente,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

La Comisión de Servicio Público apela de una sentencia adversa dictada por la corte de distrito en recurso interpuesto contra una orden de dicha Comisión. De la relación del caso preparada por el juez de distrito y adoptada por la apelante en su alegato, tomamos los siguientes hechos:

F. A. C. Hastrup era dueño y ocupaba una quinta en la jurisdicción de Guaynabo. Dicho municipio le suministraba el servicio de agua para la quinta, mediante contrato verbal, por precio de $8 mensuales. Por escritura otorgada el 24 de abril de 1930 Hastrup donó la finca a su hija Evelyn Anita Hastrup. La escritura disponía que cuando la donataria se hallara ausente de la Isla y mientras viviera el donante, éste sería el administrador de la finca. Hastrup continuó ocupando la casa y pagando el agua como venía haciéndolo hasta la terminación del año 1934, en que dejó de pagarla. Luego el municipio se negó a darle servicio de agua a John Frese, arrendatario de Evelyn Hastrup, a menos que la suma adeudada, ascendente a $158.33, por concepto de agua, le fuese satisfecha. Compareció el señor Frese ante la Comisión de Servicio Público y radicó una querella acompañada de un certificado de depósito. Este certificado debía aplicarse al pago de la deuda del municipio si se resolvía que el arrendatario Frese o Evelyn A. Hastrup, arrendadora y dueña de la finca, debían pagar el agua. Si se resolvía que debía pagarla Hastrup, el anterior dueño, el certificado debía devolverse a Frese.

De la prueba que se presentó en la Comisión resulta que Hastrup habitó la casa durante el período en que dejó de pagarse el agua. Durante ese tiempo su hija Evelyn residía permanentemente en la ciudad de Nueva York. No aparecía de la prueba que Hastrup celebrase un nuevo contrato con el municipio, sino que siguió utilizando y pagando el agua como había venido haciéndolo antes de la donación. La Comisión declaró que toda vez que aparecía de la escritura de donación que Hastrup continuaría como administrador de la finca, la donataria era responsable y el municipio tenía derecho a aplicar el certificado de depósito al pago de la deuda. Frese apeló por entender que Hastrup, y no su hija, debía pagar por dicho servicio.

En el presente recurso el primer señalamiento es que la corte de distrito cometió error al llegar a la conclusión de que

la prueba que la Comisión tuvo ante sí no demostraba ningún nexo contractual entre la hija y el municipio.

El apelante hace las siguientes citas: 2 C. J. S. 1045, sección 23; *Griffith* v. *Alcocke,* 37 So. 47; *Beach* v. *Huntsman,* 83 N. E. 1033; *Dodd* v. *Atlanta,* 28 A. L. R. 465, y nota 472, 475 y 486; *Smith* v. *Scranton Gas & Water Co.,* (1899) 5 Lack. Legal News (Pa.) 235; *Suau* v. *Capital de P. R.,* 50 D.P.R. 768, 776.

Una lectura de la opinión emitida en *Beach* v. *Huntsman,* bastará para distinguir ese caso. No tenemos acceso al de *Smith* v. *Scranton Gas & Water Co*. El apelante descansa en la descripción contenida en la monografía puesta al caso de *Dodd* v. *Atlanta,* supra, en la página 480. Bajo las circunstancias del presente, no estamos preparados para revocar la sentencia de la corte de distrito por la autoridad del caso de Smith.

No tenemos la escritura de donación ante nos. De otra escritura otorgada por Hastrup el 31 de diciembre de 1936, se desprende que en la escritura de donación Hastrup no sólo estipuló que mientras viviera y su hija se hallara ausente de la Isla, él administraría la finca, sino también que mientras viviera y viviera su esposa, la hija suministraría una habitación a cada uno de ellos. De conformidad con las condiciones de la escritura de donación, la propiedad no podía ser enajenada, vendida ni gravada por la hija sin consentimiento expreso de sus padres o del que de ellos viviera en caso de morir uno u otro. Evidentemente el donante, al momento de hacer la donación, no tenía en mente cambiar de residencia hasta que así se lo dictara su propia conciencia. Mientras la hija permaneciera en Puerto Rico el donante no tenía deberes que cumplir como administrador. Una vez que la hija saliera de esta Isla sus deberes como administrador no eran onerosos. Nada hay que demuestre que él en ocasión alguna rindiera cuentas, le cobrara algo a su hija, llevara jamás cuenta de sus actos como administrador o realizara acto alguno de administración. La hija, como dueña del tí-

tulo legal, tenía, desde luego, ciertos derechos, que pudo haber ejercido, pero que no ejerció hasta que su tío, John Frese, se convirtió en arrendatario y apoderado suyo. Del 24 de abril de 1930 al 1 de junio de 1936, la transacción entre Hastrup y su hija parece haberse quedado "enteramente en familia" y Hastrup era el jefe de la familia. En la escritura de 31 de diciembre de 1936, en que Hastrup renunciaba, vendía y cedía a su hija todos los derechos reservádosle al tiempo de la donación, él explicaba y estipulaba que no era responsable de ninguno de los gastos corrientes de sostenimiento después del 1 de junio de 1936.

El contrato de Hastrup con el municipio, conforme indica el juez de distrito, fué puramente personal. El municipio no tenía gravamen sobre la propiedad. La hija continuó con sus padres desde el momento de la donación, o sea desde el 24 de abril de 1930 hasta el mes de octubre de 1934. Si asumimos con la apelante y con el juez de distrito que el contrato de Hastrup con el municipio tenía fecha anterior a la donación, la escritura de donación no convirtió a la hija en parte contratante en el primer contrato. Si, por otro lado, asumimos—contrario a la teoría de la apelante y de la corte de distrito—que Hastrup celebró dicho contrato con el municipio con posterioridad a la fecha de la donación, el resultado sería el mismo. Él no pretendía actuar como agente de su hija ni actuó como tal, puesto que no era agente de ella para aquel entonces. La inferencia es que él se surtía de agua a sí mismo y a su familia, incluyendo a su hija. Él pagó el agua a razón de $100 anuales hasta fines de 1934. Bajo el contrato celebrado por el padre, la hija no era responsable con anterioridad a su partida en octubre de 1934, y su ausencia de la Isla no creó tal responsabilidad.

El juez de distrito no cometió el error imputádole en el primer señalamiento.

El segundo señalamiento es que la corte de distrito cometió error al aplicar el principio envuelto en el caso de

*Suau Carbonell* v. *Capital,* 50 D.P.R. 768, a los hechos de este caso.

El juez de distrito dijo que en la evidencia que tuvo ante sí la Comisión no hay nada que demuestre nexo contractual entre Evelyn Anita Hastrup y el municipio de Guaynabo, a no ser la cláusula de la escritura de 24 de abril de 1930, en la cual se nombraba a Hastrup administrador de la finca. Entonces resolvió que a virtud de dicha cláusula la hija no estaba obligada a pagar por el padre, sobre todo si se tiene en cuenta que el municipio no tiene gravamen alguno sobre la finca. Citó el caso de *Suau Carbonell* v. *Capital.* Estaba bajo la impresión de que el contrato del padre con el municipio había sido anterior a la donación. El caso de Suau se explica por sí mismo. Difícilmente resultaría justo para con el juez de distrito el asumir que lo citó en apoyo de su manifestación de que la cláusula de referencia no bastaba para establecer una relación contractual entre la hija y el municipio. Su relación del caso y opinión, lógicamente interpretada, no revela un concepto erróneo de lo que se decidió en el caso de Suau ni una aplicación equivocada de la doctrina del mismo.

El tercer señalamiento es que la corte de distrito cometió error al dictar la sentencia apelada y al no confirmar la decisión de la Comisión de Servicio Público. Carece igualmente de mérito.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Sres. Travieso y De Jesús no intervinieron.